Grafton
No. 95-476

K & J ASSOCIATES *& a.*

v.

CITY OF LEBANON *& a.*

October 1, 1997

*Casassa and Ryan*, of Hampton (*John J. Ryan* on the brief and orally), for the plaintiffs.

*Devine, Millimet & Branch, P.A.*, of Manchester (*George R. Moore* and *Richard Sigel* on the brief, and *Mr. Moore* orally), for the defendants.

*Schuster, Wheeler, Buttrey & Wing, P.A.*, of Lebanon (*Claude T. Buttrey* and *Barry C. Schuster* on the brief, and *Mr. Schuster* orally), for the intervenor, C & R Management Corp.

BROCK, C.J. The plaintiffs, K & J Associates and Paul Korpela, appeal an order of the Superior Court (*Abramson*, J.) ruling that because the plaintiffs' appeal from the decision of the City of Lebanon Planning Board (board) was not timely filed under RSA 677:15 (Supp. 1994) (amended 1995), the court lacked subject matter jurisdiction to hear the appeal. We reverse and remand.

The plaintiffs submitted an application for site plan review of a proposed Wal-Mart retail store to the board. Both plaintiffs' counsel and a representative of the plaintiffs attended the final meeting on the application on March 24, 1994. At the meeting board member Ron Bailey moved to deny approval of the application. Bailey read a written draft of the motion and proposed determinations into the record. The motion recited the reasons for the denial and referred to two further pages of documentation attached to the motion. In a recorded vote, the board voted 7-0 (with one abstention) to grant Bailey's motion and deny the plaintiffs' application.

At the close of the meeting, the board's chairman, Norman Dobson, gave the motion regarding the application and attached documentation to the board's recording secretary, Tracy Colburn. She took the motion and other papers home that night. The following day, March 25, 1994, Colburn brought the motion and papers to the planning department office. She reviewed the motion, meeting tape, and her notes, and compiled a draft Notice of Action as required by the site plan review regulations of the City of Lebanon. The Notice of Action incorporated the motion and confirmed the board's denial of the plaintiffs' application. Colburn then phoned Dobson to request that he review and sign the Notice of Action. Later that day, a representative of the plaintiffs came to the office to request a copy of the board's decision. Colburn provided him with either a copy of the adopted motion or an unsigned copy of the Notice of Action.

On March 28, 1994, Dobson signed the Notice of Action. On March 29, 1994, Colburn sent a signed copy of the Notice of Action to the plaintiffs' representative in accordance with the Lebanon site plan regulations. On April 26, 1994, the plaintiffs filed a petition in the superior court to review the board's decision pursuant to RSA 677:15.

The superior court *sua sponte* raised the issue of the timeliness of the appeal. After a hearing, the court dismissed the appeal on the

basis that it lacked subject matter jurisdiction because the plaintiffs' petition was filed after the statutory thirty-day appeal period had run.

█ The issue of subject matter jurisdiction may be raised at any time in the proceedings. *See In Re Net Realty*, 127 N.H. 276, 277, 497 A.2d 865, 866 (1985). "[C]ompliance with the procedural deadline for filing an appeal is a necessary prerequisite to establishing jurisdiction in the appellate body." *Dermody v. Town of Gilford*, 137 N.H. 294, 296, 627 A.2d 570, 571 (1993) (emphasis omitted). If the plaintiffs did not appeal the board's decision within the thirty-day period prescribed by RSA 677:15, I, then the superior court properly dismissed the action for lack of subject matter jurisdiction. *See id.*

█ The plaintiffs challenge the superior court's ruling that the thirty-day appeal period began to run on March 25, 1994 — that is, when Colburn placed the materials relevant to the planning board decision in the planning office and made them available to the public. At issue is the prior version of RSA 677:15, I, which stated:

> Any persons aggrieved by any decision of the planning board concerning a plat or subdivision may present to the superior court a petition, duly verified, setting forth that such decision is illegal or unreasonable in whole or in part and specifying the grounds upon which the same is claimed to be illegal or unreasonable. Such petition shall be presented to the court within 30 days after the filing of the decision in the office of the planning board.

RSA 677:15 (Supp. 1994). In interpreting the statute, "this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Welch v. Director, N.H. Div. of Motor Vehicles*, 140 N.H. 6, 8, 662 A.2d 292, 293 (1995). Where the statutory language is ambiguous or where more than one reasonable interpretation exists, we review legislative history to aid in our analysis. *See State v. Telles*, 139 N.H. 344, 346, 653 A.2d 554, 556 (1995); *Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1024 (1994).

The word "decision" is undefined in the statute. Under the regulations of the City of Lebanon, however, "the decision of the Board" is reflected in the Notice of Action, which must be "signed by the Chairperson or designee." CITY OF LEBANON SITE PLAN REVIEW REGULATION 4.5 (adopted June 14, 1988). This signed document, the plaintiffs argue, represents the "decision" that must

be filed to begin the thirty-day appeal clock ticking. Consequently, under the plaintiffs' interpretation of "decision," the appeal period began to run on March 28, 1994, when the Notice of Action prepared by Colburn was signed by Dobson and made available to the public in the planning office. The defendants counter that the appeal period began to run on March 25, 1994, when Colburn filed all of the papers from the previous night's meeting in the planning office, prepared the Notice of Action, and made these materials available to the public.

"[T]he time for appeal begins to run when the decision is delivered to the official whose duty it is to file it and [the official] places the decision in the place where such decisions usually are kept." 4 R. ANDERSON, AMERICAN LAW OF ZONING 3D § 27.24, at 540 (1986). "[I]t may be difficult to establish when a decision was filed with the board." 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 33.02 (2d ed. 1993).

What event triggers the beginning of the appeal period as contemplated in the statute is ambiguous at best. *See LaVallee Northside Civ. Ass'n v. Coastal Zone Mgt.*, 866 F.2d 616, 623 (3d Cir. 1989). Dictionary definitions are unhelpful; the legislative history provides no guidance.

Nor does the amended version of the statute clarify the triggering event for beginning the appeal period. The current version of RSA 677:15, I, states that a petition for appellate review "shall be presented to the court within 30 days after the decision of the planning board has been filed and first becomes available for public inspection in the office of the planning board or its clerk or secretary." RSA 677:15, I (1996). The amendment, however, does not shed any light on what the "decision" as contemplated by the statute actually is.

■ Ambiguities as to whether an appeal is timely are resolved in favor of the person seeking to review the determination. 4 E. ZIEGLER, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 42.04, at 42-21 (4th ed. 1996). Provisions limiting the time for appeal are based "on the assumption that the public interest will be best served by finalizing the decisions of the board and firming-up the rights to develop land at the earliest moment which is consistent with fair process." ANDERSON, *supra* § 27.24, at 532. Nevertheless, the start of the appeal period should not be triggered by so imprecise an event that the aggrieved party could effectively be deprived of the right to appeal. To be sure,

[a] litigant ought not suffer the consequences of a procedure that is so loose and indefinite. . . . By so holding, we may be doing violence to the English language. On the other hand, not to take an arbitrary stand until the board itself makes it clear to litigants when matters are entered would indeed do violence to the right of review.

*Chester Township Bd. of Trustees v. Kline*, 249 N.E.2d 921, 924 (Ohio Ct. App. 1969) (quotation omitted).

■  Because the start of the appeal period in this case is ambiguous, we choose the triggering event that is concise and consistent with fair process — the filing of the signed Notice of Action — and determine that the appeal period began to run on March 28, 1994. *See Chadwick v. Gwinnett County*, 354 S.E.2d 420, 421 (Ga. 1987). Consequently, the plaintiffs' appeal was timely filed; the trial court erred in ruling otherwise and dismissing the appeal.

*Reversed and remanded.*

BRODERICK, J., did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3; HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: The majority's analysis engrafts a site plan regulation, unique to the City of Lebanon, onto the jurisdictional prerequisites of the statute to create an appeal period beyond that found by the trial court. I would uphold the trial court's finding of no jurisdiction for the reasons enumerated herein and, accordingly, respectfully dissent.

The majority bases its conclusion on the purported ambiguity of the word "decision" in RSA 677:15 (Supp. 1994) (amended 1995). However, the plaintiffs do not contend that the term "decision" is ambiguous and should be construed in their favor; to the contrary, they define the term as including "(a) the vote of the planning board, and (b) the reason for the disapproval." They assert that the Notice of Action constitutes the "decision" of the planning board (board) because it contains the reasons for the denial of the site plan application in final form.

A review of the record reveals that there is no real dispute as to what constitutes the board's "decision." The legislature amended RSA 677:15 in 1995 to clarify the "filing" date under the statute, but not the definition of "decision." *Compare* RSA 677:15, I (Supp. 1994) *with* RSA 677:15, I (1996). None of the witnesses who testified at the superior court hearing stated that a "decision" required a signed

Notice of Action. Norman Dobson, the board chairman, stated that "[t]he Planning Board's decision was final at the time they completed their vote." In his testimony, the plaintiffs' witness, Duncan MacNamee, refers to March 25, 1994, as *the morning after the decision was made.*" (Emphasis added.) Even the attorneys' questions at the hearing assume the decision occurred at the board meeting on the evening of March 24, 1994.

This view comports with common usage of the term "decision," which is "the act of deciding." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 585 (unabridged ed. 1961). In interpreting a statute, "we ascribe to statutory words and phrases their usual and common meaning, unless the statute itself suggests otherwise." *Appeal of Booker*, 139 N.H. 337, 341, 653 A.2d 1084, 1087 (1995) (quotation and brackets omitted). Based upon the record, the board accomplished "the act of deciding" whether to approve or deny the site plan application when it voted at the March 24, 1994, meeting.

In addition to finding an ambiguity where the plaintiffs, the legislature, and the individuals involved in the planning board process did not, the majority chooses to equate the "decision" of the board with the signed Notice of Action, thus distorting the jurisdictional prerequisites for appeal contained in the statute. The Notice of Action is not the "decision." It is precisely what its name suggests, a laudatory "notice of" action taken by the board, which contains, as one component, the "decision" of the board. The statute, and not the regulations, controls the timing of the appeal. *Cf. Dermody v. Town of Gilford*, 137 N.H. 294, 296-97, 627 A.2d 570, 571 (1993). The statute does not require a signed Notice of Action to commence running of the appeal period. *See* RSA 677:15, I (Supp. 1994). The further requirement imposed by the local site plan regulations that a signed Notice of Action containing the decision and reasons for denial be transmitted to the applicant ensures *notice* to parties; it does not trigger the appeal period under RSA chapter 677.

Finally, the majority asserts that its conclusion is based on its evaluation that the date the signed Notice of Action was filed is more precise and consistent with fair process. The board chairman testified that he sometimes does not sign a Notice of Action until three to four weeks after the decision is rendered. I submit that extending a potentially month-long additional window of opportunity in which to file an appeal to certain fortunate parties lacks the virtue of preciseness. Such a process is not particularly "fair" to the citizens of Lebanon, who are entitled to finality in planning board matters. If the majority seeks to base its decision on notions of

equity to the appealing party, I note that we have suggested such notions have no place in a determination of compliance with the statutory prerequisites for subject matter jurisdiction. *See Dermody*, 137 N.H. at 296-97, 627 A.2d at 571. In circumstances such as this, we are not asked to determine what is equitable for the parties, but what the statute requires of the parties.

In my view, the trial court correctly found that the board rendered its "decision" when it voted to deny the plaintiffs' application at the March 24, 1994, meeting. The plaintiffs argue that the trial court erred because the "decision" rendered at the board meeting did not include the reasons for the denial of the site plan application. The plaintiffs assert that the board's "decision" must state the reasons for denial because the statute requires an appealing party to specify the grounds upon which it claims the decision is illegal or unreasonable in its petition for appellate review. *See* RSA 677:15, I (Supp. 1994). There is a distinction, however, between the statutory requirements and the requirements of due process. *Compare* RSA 677:15, I (Supp. 1994) *with* N.H. CONST. pt. I, art. 15. RSA 677:15 provides for only the planning board's decision to be filed in the office of the planning board, not notice of its reasoning as well. *See* RSA 677:15, I (Supp. 1994); *cf. K & P, Inc. v. Town of Plaistow*, 133 N.H. 283, 289, 575 A.2d 804, 808 (1990) (applicable statute explicitly required that planning board records state grounds for disapproval of application). Due process may require not only timely notice of the decision, but also notice of the reasons for denial so as to allow a plaintiff to perfect an appeal. *Cf. Ladd v. Coleman*, 128 N.H. 543, 546, 517 A.2d 811, 813 (1986).

The plaintiffs in this case can present no due process argument. Plaintiffs' counsel and a representative of the plaintiffs were present at the board meeting when the reasons for the denial and the determinations were read into the record. *Cf. DiPietro v. Nashua*, 109 N.H. 174, 176, 246 A.2d 695, 696-97 (1968) (noting plaintiffs attended zoning board of adjustment hearing and counsel retained after hearing could ascertain nature of evidence presented). The plaintiffs' representative received either a copy of the motion presented at the board meeting or a draft copy of the Notice of Action the day after the decision was rendered and thus was able to discern the reasons for the board's denial. *Cf. id.* The motion contained the reasons for the denial of the site plan application, and the draft Notice of Action also contained reasons for the board's decision. *See K & P, Inc.*, 133 N.H. at 290, 575 A.2d at 808 (statute satisfied because plaintiff well aware of primary reasons for denial of plan). Lack of a final version of the reasons for the board's

decision, which was not statutorily required as of the time the decision was rendered, did not divest the plaintiffs of the ability to file their appeal timely. *Cf. DiPietro*, 109 N.H. at 176, 246 A.2d at 696 (temporary unavailability of minutes did not relieve plaintiffs of necessity of stating ground for their motion for rehearing).

Our inquiry should focus on the jurisdictional prerequisite that the decision be "fil[ed] . . . in the office of the planning board." RSA 677:15, I (Supp. 1994). While the majority hints that "[i]t may be difficult to establish when a decision was filed with the board," it ultimately concludes the triggering event for the appeal period is the "filing" of the signed Notice of Action. The majority reaches this result without any analysis as to what constitutes "filing." This was a major thrust of the hearing testimony and the plaintiffs' argument on appeal.

In my opinion, the trial court did not err in finding that the decision was filed in the office of the planning board on March 25, 1994. The trial court found that "the materials relevant to the Planning Board decision on K & J's application were 'filed' . . . when Ms. Co[l]burn placed them in the office and made them available to the public." Mr. Dobson, Ms. Colburn, and city planner Ken Niemczyk all testified that the decision, in the form of a typed, but unsigned, Notice of Action, was available to the public on March 25, 1994. An agent of the plaintiff came to the board office that day and was provided with either a draft Notice of Action or a copy of the motion. The evidence thus supports the trial court's ruling that the decision was "filed" on March 25.

The plaintiffs nonetheless argue that "filed" under former RSA 677:15, I (Supp. 1994), is synonymous with "recorded," and that the decision was not recorded until after the chairman signed it on March 28, 1994. The plain language of the statute required the decision to be "filed," not "recorded." RSA 677:15, I (Supp. 1994). The recognized meaning of "file" is "[t]o deliver an instrument or other paper to the proper officer or official for the purpose of being kept on file by him as a matter of record and reference in the proper place." BLACK'S LAW DICTIONARY 628 (6th ed. 1990). To "record" is to "enter in a . . . file . . . for the purpose of preserving authentic evidence of." *Id.* at 1273. It is apparent from the testimony that the individuals involved in the city planning process considered the board's decision to be part of the "file" or "record" on March 25, 1994. The planning office secretary had the materials in her office, at her desk, and available to the public. The public could and did refer to the documents as evidence of the board's decision on March 25, 1994.

The evidence also supports the trial court's conclusion that the board's decision was complete for filing purposes before the chairman signed the typed Notice of Action on March 28, 1994. Although the chairman retained the right to correct or adjust the document evidencing the decision, he testified that this was a "paper procedure," limited primarily to correcting typographical errors. The city planner likewise stated that the chairman did not have the authority to make substantive changes in the board's decision before signing the Notice of Action.

I conclude the trial court did not err in its reading of the statute and its interpretation was supported by the evidence. I would therefore affirm its ruling that it lacked subject matter jurisdiction to hear the appeal.

THAYER, J., joins in the dissent.