Carroll
No. 2001-084

# E. MILTON DOW

## v.

# TOWN OF EFFINGHAM

Argued: May 8, 2002
Opinion Issued: July 25, 2002

*Cooper, Deans & Cargill, P.A.*, of North Conway (*Randall F. Cooper* on the brief and orally), for the plaintiff.

*Upton & Hatfield, LLP*, of Concord (*Barton L. Mayer* on the brief and orally), for the defendant.

*McNeill, Taylor & Gallo, P.A.*, of Dover (*Malcolm R. McNeill, Jr.* and *Lynne M. Dennis* on the brief, and *Mr. McNeill* orally), for the intervenor.

DUGGAN, J. The plaintiff, E. Milton Dow, appeals a decision of the Superior Court (*O'Neill*, J.) upholding the validity of a race track ordinance enacted by the defendant, Town of Effingham (town). We affirm.

On March 2, 1997, the plaintiff informed the town's planning board of his intent to construct and operate a race track on his land. At that time, the town had no zoning laws in effect and, other than the requirement that he secure a license from the town prior to the scheduling of any outdoor public event, the town had no other ordinances, rules or regulations which would have prevented the plaintiff from proceeding with his project. On March 4, 1997, the planning board informed the town's board of selectmen that the plaintiff intended to construct a NASCAR race track on his property. The board of selectmen appointed a Race Track Ordinance Committee (committee) to draft a race track ordinance for the town. The committee met regularly for a period of months, reviewed ordinances from several other towns, and ultimately drafted an ordinance which it submitted to the board of selectmen for consideration. The board of selectmen adopted the ordinance on an interim basis under RSA 31:42 (2000) and placed an article in the town warrant notifying voters that they would be asked to vote upon the ordinance at the next annual town meeting. At that meeting, a ballot vote was taken and a majority of the voters in attendance voted to adopt the ordinance.

On September 13, 1999, the plaintiff applied to the selectmen for a race track permit, as required by the ordinance. The selectmen voted to deny the permit. The plaintiff did not file a request for rehearing, but instead filed a petition for declaratory judgment in superior court asserting that the race track ordinance was unconstitutional on its face and as applied to his property. Lost Valley Property Owners, Inc., a homeowners association representing the owners of lots in a residential subdivision abutting the plaintiff's property, intervened in the suit. After a view and a three-day trial, the superior court ruled that the race track ordinance was neither unconstitutional on its face nor as applied to the plaintiff's property. The plaintiff filed a motion to reconsider and for a new trial, which was denied.

On appeal, the plaintiff argues that: (1) the superior court did not use the proper standard of review in determining the constitutionality of the ordinance; (2) the town did not follow proper procedures in enacting the ordinance; (3) the ordinance, even if validly enacted, should not apply to the plaintiff because he had a vested right to complete construction and operate the race track and because it was adopted in a bad faith attempt to prohibit a permissible use of his property; and (4) the ordinance is

impermissibly vague. The plaintiff also argues that the superior court erred in denying his request for attorney's fees.

We will affirm the superior court's factual findings unless they are unsupported by the evidence and we will affirm the superior court's legal rulings unless they are erroneous as a matter of law. *Morgenstern v. Town of Rye*, 147 N.H. 558, 561 (2002).

## I. Substantive Due Process

We first consider whether the superior court used the correct standard of review in determining the constitutionality of the ordinance. The plaintiff makes a substantive due process claim, arguing that the race track ordinance is invalid because it violates his constitutionally protected right to own, use, and enjoy his property. The superior court determined that the race track ordinance was valid after subjecting it to a rational basis test. More specifically, the court inquired whether the plaintiff proved that the ordinance "constitutes a restriction on property rights that is not rationally related to the town's legitimate goals." *Asselin v. Town of Conway*, 137 N.H. 368, 372 (1993). On appeal, the plaintiff argues that the superior court erred in evaluating his substantive due process challenge to the ordinance by applying the rational basis test, instead of the middle tier, or fair and substantial relationship standard.

A substantive due process challenge to an ordinance questions the fundamental fairness of an ordinance "both generally and in the relationship of the particular ordinance to particular property under particular conditions existing at the time of litigation." *Caspersen v. Town of Lyme*, 139 N.H. 637, 642 (1995) (*citing* 1 E. ZIEGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 3.01[1], at 3-3 (2001)). In contrast, an equal protection challenge to an ordinance is an assertion that the government impermissibly established classifications and, therefore, treated similarly situated individuals in a different manner. *See* 2 R. ROTUNDA & J. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 14.7, at 566-67 (3d ed. 1999). In determining whether an ordinance is a reasonable exercise of the municipality's police powers and, therefore, can withstand a substantive due process challenge, we have consistently applied the rational basis test. Under this test, we consider whether "the ordinance bears a reasonable relationship to its objective and does not unduly restrict fundamental rights." *Powers v. Town of Hampton*, 125 N.H. 273, 276 (1984). While substantive due process challenges are evaluated under this rational basis test, we review equal protection challenges to ordinances with heightened scrutiny. *See Town of Chesterfield v. Brooks*, 126 N.H. 64, 67-69 (1985) (explaining that equal

protection challenges are subject to either strict scrutiny or fair and substantial relationship standard).

■ Although the plaintiff does not contend that the ordinance violates his equal protection rights, he argues that the race track ordinance is not a reasonable exercise of the town's police power and urges this court to adopt the fair and substantial relationship test as the appropriate standard for reviewing his substantive due process claim. Under the fair and substantial relationship test, the regulation must "be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Id.* at 69. The plaintiff argues that because the right to own, use, and enjoy one's property is considered a fundamental personal right, *see id.* at 67, any regulation of land use that restricts an individual's property rights should be evaluated under this heightened scrutiny. While the New Hampshire Constitution provides that all persons have the right to acquire, possess, and protect their property, *see* N.H. CONST. pt. I, arts. 2, 12, this court has never employed the fair and substantial relationship standard for substantive due process claims. *Cf. Caspersen*, 139 N.H. at 646 (Brock, C.J., concurring) (suggesting that given an appropriate occasion, we should review our holding that substantive due process challenges to zoning ordinances are evaluated under the rational basis standard); *see also Quirk v. Town of New Boston*, 140 N.H. 124, 129 (1995). We see no reason to alter the standard today.

■ When a party contests the validity of an ordinance on the basis that it burdens *all* seeking to engage in the proscribed action, the appropriate inquiry is whether the claimant has proved that the ordinance constitutes a restriction on property rights that is not rationally related to the town's legitimate goals. *See Quirk*, 140 N.H. at 132. Under this standard, there is a presumption favoring the constitutionality of the regulation, and in determining the validity of a municipal ordinance, its reasonableness will be presumed. *See Piper v. Meredith*, 110 N.H. 291, 298 (1970). The rationale behind this presumption stems from the principle that enacting ordinances "is a legislative function and judging the wisdom of the legislation is not the function of this court." *Quirk*, 140 N.H. at 129 (quotations, citations, ellipses and brackets omitted). We have explained that we "will not second-guess the town's choice of means to accomplish its legitimate goals, so long as the means chosen is rationally related to those goals." *Caspersen*, 139 N.H. at 644. With regard to zoning ordinances, we have noted that towns need to have discretion in passing ordinances because "[i]n another town, on an identical fact pattern, a different decision might lawfully be reached by another [zoning board]. This does

not mean that either finding or decision is wrong *per se.*" *Nestor v. Town of Meredith*, 138 N.H. 632, 634 (1994). Although this case involves a town's exercise of police powers, rather than a zoning ordinance, similar considerations apply. The ability of a town to regulate must be flexible, both to protect the public against new dangers and to accommodate new methods of dealing with existing problems. *See* 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 5.14, at 84-85 (2000). Were we to apply the fair and substantial relationship test to all substantive due process challenges relating to property rights, it would be necessary for us to sit as a "super" town meeting or land use board. We refuse to do so.

█ Although an ordinance may be *facially* valid because it promotes the public health, safety and the general welfare, this does not end the matter. In order to respect the property owner's rights, it is also necessary to determine whether the ordinance is "nevertheless arbitrary and unreasonable *as applied* to the plaintiff's land." *Metzger v. Town of Brentwood*, 117 N.H. 497, 501 (1977) (emphasis added). "To determine whether an ordinance is arbitrary and unreasonable, the injury or loss to the landowner must be balanced against the gain to the public." *Buskey v. Town of Hanover*, 133 N.H. 318, 323 (1990).

> In other words, when the restriction as applied to a particular piece of land is unnecessary to accomplish a legitimate public purpose or the gain to the public is slight but the harm to the citizen and his or her property is great, the exercise of the police power becomes arbitrary and unreasonable and this court will afford relief under the constitution of this state.

*Id.* (brackets and quotations omitted). Thus, just as a variance acts as a safety valve that "saves the otherwise valid zoning ordinance from death at the hands of property owners with site-specific constitutional claims," *Grey Rocks Land Trust v. Town of Hebron*, 136 N.H. 239, 246 (1992) (Horton, J., dissenting), this balancing test provides a safety valve for otherwise reasonable ordinances passed pursuant to a town's police powers that may be unconstitutional when applied to a property owner with a site-specific constitutional claim.

█ We must now decide whether the ordinance here is constitutional both facially and as applied to the plaintiff's land. The stated purpose of the race track ordinance is to

> protect the public health, safety and welfare, as well as to prevent the degradation of the environment and the quality of

life in the Town of Effingham by insuring that provisions are made for traffic, safety, trash removal, control of dust, noise, glare, and further insuring that adequate and appropriate facilities are provided on the property.

The plaintiff asserts that certain provisions contained within the race track ordinance are facially invalid because they bear no relationship to the above goals. These provisions are: (1) the requirement that the premises may be inspected at any reasonable time without notice or consent; (2) the requirement that all litter must be cleaned up within twenty-four hours from the end of each racing event; (3) the prohibition on all overnight camping; (4) the requirement that applicants for a race track permit post a cash bond in the minimum amount of $50,000; (5) the requirement that the applicant maintain liability insurance and indemnify the town from all liability; (6) the requirement that vehicles be equipped with a muffler that reduces noise to a certain decibel level; and (7) the ban of the accumulation of junk upon the property.

The superior court did not review each of these provisions individually, but rather explained that "[h]aving reviewed the provisions of the ordinance, the Court finds and rules that the ordinance is rationally related to the defendant's legitimate goals and, therefore, does not violate the plaintiff's substantive due process rights." We agree that it is manifestly reasonable for the race track ordinance to require indemnification of the town and to further regulate litter, overnight camping, noise, and the accumulation of junk on the property. As the plaintiff has failed to meet his burden in proving that the above regulations are not rationally related to the town's legitimate goals, we conclude that an individual analysis of each of these factors in unnecessary.

■ It is less clear whether the town's regulations pertaining to inspection of the plaintiff's premises and a $50,000 cash bond are rationally related to the defendant's legitimate goals. Thus, an individual analysis of these two regulations is warranted. With regard to the requirement that the town may inspect the premises of the race track, the ordinance specifically provides that the town "may enter, with or without notice or consent, the premises of any racetrack which holds or has applied for a license at any reasonable time to inspect and report on the conditions found to ensure that the applicant is in compliance with the provisions of the regulations." Although the plaintiff asserts that the above requirement is unconstitutional because it permits the town to inspect the premises "at any time" and the scope of the inspection is "undefined," we disagree. The ordinance specifically limits inspections to a reasonable time and is limited to the property subject to the license. Given the large crowds and inherent

dangers associated with motor vehicle racing, the town has an interest in ensuring that all necessary safety measures have been taken. Thus, a regulation for the purpose of insuring that "the applicant is in compliance with the provisions of the regulations" is reasonably related to the town's legitimate goals. Although the plaintiff contends that such an inspection must be conducted under the authority of a search warrant, we have held that such administrative inspections are permissible in discrete situations. *See Appeal of Morgan*, 144 N.H. 44, 49 (1999) (recognizing administrative search exception to the requirement of a search warrant). Moreover, this approach is similar to other State statutes governing licensed facilities. *See, e.g.*, RSA 155-E:10, III (2002) (sand and gravel operations); RSA 72:12-a (2001) (water and air pollution facilities); RSA 266:7 (1993) (school buses); RSA 325:17 (1995) (funeral homes); RSA 321-A:2-a (1995) (carnival and amusement rides); RSA 225-A:10 (2000) (passenger tramways).

We next consider whether the requirement that the owner and operator post a cash bond with sufficient securities in a minimum amount of $50,000 is reasonable. The plaintiff argues that the ordinance is unreasonable because it was not passed for a legitimate reason, but rather as "a guise for establishing an expensive and substantial hurdle to be overcome before a race can be conducted, without any basis of an expectation that expenses in that amount could ever be incurred by the [t]own." While the town maintains that the amount of the bond is a reasonable estimate of its exposure for fire, ambulance, police services and equipment, the question remains whether requiring a cash bond is reasonable. During the trial, however, there was testimony that the committee only intended a race track operator to provide a bond executed by a surety company. As the ordinance requires a "cash bond with sufficient securities," we conclude that the ordinance could be interpreted as only requiring a race track operator to post a surety bond. As such a requirement is not unreasonable, we conclude that the plaintiff has failed to meet his burden in proving that such a bond is not rationally related to the town's goal of protecting itself from potential liabilities.

We lastly turn to the question whether the race track ordinance, as applied to the plaintiff's land, violates his substantive due process rights. The town contends that the plaintiff has waived this claim because he never challenged the rejection of his application in his pleadings, but only made a facial attack upon the ordinance. We agree. While pleadings are treated liberally, it remains necessary that counsel be able to understand the dispute and the court be able to decide the controversy on its merits. *See Berlinguette v. Stanton*, 120 N.H. 760, 762 (1980). A review of the plaintiff's amended pleadings reveals that the plaintiff does not contest the

denial of his application under the ordinance, but only makes a facial attack on the ordinance itself. While the pleadings state that the ordinance is "unreasonable and oppressive in its terms and as applied to the [plaintiff's] property," the plaintiff attacks the application of the ordinance to his property only on the grounds that (1) he had a vested right to construct and operate a race track on his property, and (2) the ordinance was not adopted in good faith but instead to prohibit him from conducting races on his property. Moreover, the plaintiff's only request for relief was for the superior court to declare that the race track ordinance did not apply and that it could not be enforced against the plaintiff's property. There is no requested relief associated with the actions of the board of selectmen in denying the plaintiff's application. We conclude that the plaintiff did not preserve this issue below and we will therefore not address it.

## II. Procedural Due Process

The plaintiff's second argument is that the town meeting's adoption of the ordinance did not comply with procedural due process requirements. As previously noted, the ordinance was drafted by the committee, and adopted by the town's board of selectmen as an interim regulation pursuant to RSA 31:42. This statute provides that the ordinance will only remain in effect until the following annual town meeting. *See* RSA 31:42. The board of selectmen, therefore, included in the warrant for the next annual town meeting an article calling upon the voters: "To see if the Town will vote to adopt a Racetrack Ordinance as written by the Town of Effingham Racetrack Committee." Because the full text of the ordinance was not printed in the annual report, nor was public notice given regarding its availability for inspection, the plaintiff argues that his procedural due process rights were violated because due process requires something greater than mere notice that a particular ordinance will be discussed at the town meeting.

"It is well settled that an elementary and fundamental requirement of due process is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *City of Claremont v. Truell*, 126 N.H. 30, 35 (1985) (quotations, brackets and ellipses omitted). While the subject matter of all business to be acted upon at the town meeting must be distinctly stated in the warrant, unlike zoning ordinances, nothing requires the town to either print the full text of a race track ordinance in the town warrant or to provide notice as to where the proposed ordinance was on file for public inspection. *Compare* RSA 31:41-a (2000), RSA 39:2 (2000) *and* RSA 31:131 (2000) *with* RSA 675:7 (1996).

■ In this case, the town specifically stated in the warrant that a vote would be taken on the race track ordinance. While the warrant did not provide notice as to the place where the proposed ordinance was on file for public inspection, due process does not require the town to provide such information. So long as copies of the proposed ordinance are on file for public inspection prior to the town meeting and it is generally understood where these copies can be obtained, the requirements of due process are met. Here, the record shows that copies of the ordinance were made available well in advance of the town meeting and were located at the town hall. As such, we conclude that the superior court did not err in determining that the procedures by which the town notified the residents that the ordinance would be voted upon at the town meeting were sufficient to comply with procedural due process requirements.

*III. Vesting*

The plaintiff next argues that, based upon the improvements he has already made to the lot, he acquired a vested right to operate a race track on his property. We conclude that this argument is also without merit. "The common law doctrine of vested rights entitles a landowner to complete his project when he has made substantial construction or incurred substantial liabilities in good faith reliance upon the absence of regulations prohibiting the project." *Chasse v. Town of Candia,* 132 N.H. 574, 579 (1989). The property owner who claims a vested right bears the burden of proving all necessary elements establishing that right. *See Healy v. Town of New Durham,* 140 N.H. 232, 238 (1995). As to the effect of the plaintiff's expenditures, each case presents a question of fact peculiar to its own set of circumstances, and the ultimate objective is fairness both to the public and to the individual property owners. *See Piper,* 110 N.H. at 300. We uphold the superior court's findings of fact unless they are unsupported by the evidence. *See Healy,* 140 N.H. at 238.

The superior court, which had the benefit of a view, found no evidence of substantial construction or expenditures in furtherance of the proposed race track, and thus no vested entitlement to proceed with development of the race track. In its order, the superior court explained:

> Having taken a view, however, the Court finds that the plaintiff has not made substantial improvements to the property. He has not constructed any permanent structure on the site, but has merely placed a small shed on location (still on blocks) to serve as a "ticket distribution complex" should the track become operational. . . . Aside from the placement of the shed, all the plaintiff has accomplished is clearing trees and moving some

earth to indicate the proposed site of the track itself; this does not constitute a substantial investment or inconvenience as he is in the business of moving sand and gravel on a daily basis on another part of the same parcel.

On the record before us, we cannot say the superior court's decision was unreasonable. *See id.* While we disagree that the plaintiff's efforts in clearing trees and moving earth cannot constitute a substantial investment for the sole reason that "he is in the business of moving sand and gravel," we hold that even taking these efforts into consideration the plaintiff has failed to prove that he has established a vested right. *See Sanderson v. Town of Greenland,* 122 N.H. 1002, 1005-06 (1982) (holding that where property owner, before zoning change took effect, had prepared subdivision for construction by clearing it, building a rough road, and by digging drainage ditches, the site improvements were of a preliminary nature involving only preparatory work and no vested right was established). When compared to the total expenditure which would be required to complete the proposed race track, the plaintiff's investment thus far is insubstantial. *See* 4 ZIEGLER, *supra* § 70.22, at 70-51 to 70-56. Moreover, the superior court noted that there was testimony at the trial indicating that the plaintiff had not even begun clearing trees and moving earth until after the adoption of the ordinance. In light of the above, we conclude that the superior court did not err in determining that the plaintiff did not acquire a vested right to operate a race track on his property.

*IV. Bad Faith*

The plaintiff's fourth argument is that the superior court improperly excluded evidence relating to the plaintiff's claim that the ordinance was adopted in bad faith to prevent him from operating a race track. It is evident from the facts of this case that the race track ordinance was enacted in direct response to the plaintiff's race track proposal. The trial court, however, ruled that all evidence regarding the committee members' motivation in proposing the race track ordinance and the board of selectmen's motivation in deciding to place the proposed ordinance on the warrant was irrelevant and thus inadmissible. We agree. The ordinance at issue was enacted by the voters at the town meeting. Because the decision to enact the ordinance ultimately rested with the voters, any bad faith on the part of the committee or the board of selectmen is irrelevant and was properly excluded by the superior court. *Cf. Kennedy v. Town of Sunapee,* 147 N.H. 79, 85 (2001).

*V. Vagueness*

The plaintiff's fifth argument is that the race track ordinance is void because it does not apprise an applicant of the standards that the selectmen are to use when reviewing an application for a race track permit. He argues, more specifically, that the ordinance is not sufficiently clear to prevent arbitrary and discriminatory enforcement. In support of his argument, the plaintiff points to the ordinance's requirement that applicants for a race track permit provide an adequate narrative statement and plans of how the requirements of the ordinance shall be complied with, including the number of security officers to be on site, traffic control measures, monitoring wells, drainage facilities, lighting, noise control measures, access and egress, emergency services, off-street parking, and lavatory facilities. The plaintiff argues that this portion of the race track ordinance is void for vagueness because "[t]here are no specific requirements setting out how much of any of these items might be necessary."

In determining that the ordinance is not unnecessarily vague, the trial court explained:

> Those phrases the plaintiff cites as vague are in fact intentionally and necessarily flexible to enable the effective regulation of all types of race tracks. As there are endless variations in the type of race track property owners may wish to operate, the ordinance must provide the Board of Selectmen the flexibility to respond to each applicant's objectives.

We agree. Although the plaintiff complains that the ordinance does not provide specific standards explaining what the town might consider adequate, we hold that this lack of guidance does not render the ordinance unnecessarily vague. The race track ordinance was enacted to deal with a variety of races that could vary as to the types of vehicles being raced and the size of the events. Depending upon the foregoing, the specific requirements for each race track would differ.

"A law is not necessarily vague because it does not precisely apprise an applicant of the standards by which an administrative board will make its decision." *Webster v. Town of Candia*, 146 N.H. 430, 435 (2001) (quotations and brackets omitted). While the ordinance does not specify the exact standards required by the selectmen in assessing a request for a race track permit, we conclude that it is implied that the selectmen will exercise their discretion consistent with the purpose of the race track ordinance. *See id.* at 435. As previously discussed, the purpose of the race track ordinance is to protect the public health, safety and welfare, as well as to

prevent the degradation of the environment and the quality of life in the town by insuring that provisions are made for traffic, safety, trash removal, control of dust, noise, glare, and further insuring that adequate and appropriate facilities are provided on the property. The application for a race track permit, when read as a whole, informs a property owner that any plans to operate a race track must provide sufficient information to enable the board to conclude that appropriate provisions have been made to comply with the above goals. *See Derry Sand & Gravel, Inc. v. Town of Londonderry*, 121 N.H. 501, 505 (1981).

## VI. Attorney's Fees

The plaintiff lastly argues that he is entitled to an award of attorney's fees due to the bad faith of the town in enacting the ordinance and because if he prevails he will have conferred a substantial benefit upon future applicants, citizens and taxpayers of the town by bearing the burden of setting aside the ordinance.

"Where a party is forced to seek judicial assistance to secure a clearly defined right, a court may award attorney's fees to the prevailing party if bad faith on the part of the losing party is established." *Taber v. Town of Westmoreland*, 140 N.H. 613, 616 (1996). In this case, the plaintiff is not entitled to attorney's fees because he is not the prevailing party.

## VII. Other Issues

In light of our decision upholding the race track ordinance, we need not address the plaintiff's remaining arguments because resolution of these issues would have no effect on the outcome of this case. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

BROCK, C.J., and DALIANIS, J., concurred.